and we'll move to our second case this morning, United States v. Gan. All right. I see both counsels, so we can proceed. Mr. Leavitt. Thank you. Good morning. Can everyone hear me all right? Yes. Okay. Sounds great. And good morning, Judge Hamilton and Brennan as well. And may it please the court, and good morning to you as well, counsel. Is everyone here? Yes. Mr. Fulton is back. Okay. All right. I'd like to start this morning by addressing the issue regarding the law enforcement expert testimony of Special Panel. So, we have submitted on Mr. Gan's behalf that this testimony constituted error in plain error at that. So, just to recap and go back over the groundwork of what the law is in this area, just briefly, opinion testimony from law enforcement experts, it can take two forms like any other opinion testimony, lay or expert. I got no audio. I get nothing. We need to, that was Stewart. He's not hearing me. There we go. Okay. You may proceed, Mr. Leavitt. Okay. Thank you. I was just saying this law enforcement expert testimony, and of course, can, when in opinion form, be either lay or expert. We, just up front, we acknowledge that law enforcement expert witnesses are permitted to testify regarding the meaning of narcotics, code word, jargon, and similar subjects. The same is, of course, true as this Court has recognized with ambiguous pronouns that may or may not refer to contraband. What is not allowed, however, is when expert offer, experts offer interpretation of unambiguous words or phrases within the plain understanding. The same is true of jargon outside the expert's area of expertise. Most problematic and the real, the central crux of this issue that we're raising is what I'd call interpretive expert testimony. It's situations where experts interpret evidence too broadly, where they put a gloss on conclusions the jury should draw for itself, where they function like effectively as summary witnesses or case agents that the government's presenting, and of course, when they narrate and explain entire passages or pieces of evidence for the jury. The error in that situation, in the words of the Eleventh Circuit, is clear and obvious. So we cited... Mr. Levick, if I could jump in here and ask a question before you get too far down the road of the merits of the evidentiary objection that you're raising for the first time on appeal, and that is, there is an argument that this objection was waived, not even forfeited. So perhaps you could address that. I will. And I think the government's point about waiver, it's almost like they're reframing our issue as a Strickland challenge on 2255, as opposed to something just a straightforward plain error argument brought pursuant to Rule 52. And I think part of that was reframing the nature of the defense that was presented at trial and to talk about it as if it was a strategic decision. But that certainly was not the case, and that's not necessarily the rubric we analyzed plain error through. This was not a situation where the defense was simply that Mr. Gunn was not on the wire transcripts, and that's it. Therefore, Agent Dunewitt's testimony was irrelevant according to the defense. By contrast, there were references to Gunn who the government argued was Gunn. It didn't say Jean-Bing Gunn specifically by name. What it said on those wires was old Gunn, which is, you know, who's old Gunn, and then also Gary, which is sort of the anglicized version of his name that he goes by according to the government. And they actually called Michelle Lim, the cooperating witness who was reportedly the main courier for the money laundering organization, and she herself identified him as old Gunn and Gary and the person that's being referred to and referenced on these wire transcripts. So to say that the defense was just something along the lines of a strategic decision to bypass what Agent Dunewitt's was saying when she said, I mean, when she play by play said, you know, no, no, no, here's what's going on. This is what's happening. This is old Gunn's role in it. When there's other pieces of evidence connecting the defendant to being that old Gunn, there's no basis in my, respectfully, to suggest that the failure to challenge his testimony was strategic and to take us out of the realm of plain error. So again, it's... If I could follow up on that. Can you direct us to cases in which we have overturned verdicts on a plain error review on similar grounds? Not off the top of my head, Judge Hamilton. It's certainly the fact... I'd certainly agree and acknowledge that a lot of the cases we cited that set forth this doctrine where they're saying, hey, this testimony is so improper, were situations where they said, but the evidence is overwhelming. So therefore, we're not, you know, we're not remanding, even if we were to find error, do you think this is error? I will say, though, in response to your question that the plain error... Plain error is always a case-specific situation. It's always a case-specific analysis. And it's a fair point to bring up some of the sort of minor issues with the expert testimony or less significant ones. The idea, the issue that courts have repeatedly said across the country that jurors should be left to interpret... The experts shouldn't be allowed to interpret obvious phrases. When that happens, it's very tough to show plain error, but that's why... We're familiar with that doctrine. It is argued often, but it also is the kind of thing that is easy to fix if there's an objection at trial. If there's no objection at trial, it's pretty hard to see. I guess it's difficult for me to see prejudice in this case, particularly if what you're saying is that what was being interpreted was obvious. Could you identify what you think are the most prejudicial or troubling examples of the testimony offered that you think was improper? Of course. Just to wrap up what I was saying, I was actually going to agree with you that the interpretation of obvious points is very difficult to show prejudice. That's not the crux of the prejudice here. What is and what I think is the main problem is the play-by-play and color commentary from this person who had no actual involvement with the investigation. That testimony spanned over probably roughly 100 pages of the trial transcripts. I will come back, if I get a second, to your point about the lack of objection, because the district court actually, if you recall, did try to give a sua sponte instruction itself that read to me like it almost was catching the air that no one else seemed to notice. To your point, there's a couple of conversations I would certainly highlight. We did our best to summarize those in our brief as concisely as possible because, again, we're taking issue with about 100 pages of the trial transcript. Anyways, those are, I'd point to in particular, Government Exhibit 004-T. That was a situation in which Agent Denowitz interpreted the entire conversation between a man named or someone named Louis Vuitton, who's of course a nickname, and Pan, the main co-conspirator, including their arrangements for a money pickup being made. She talked about their comfort level with each other. She talked about how they were suspicious of law enforcement involvement. She went and characterized and discussed the back and forth they had about information that they learned from the Kong seizure, the one seizure in New York that happened. She also characterized that conversation as a very important discussion and went on to talk further. I would say the same thing and make the same point about 011-T, which is a conversation Agent Denowitz described as one between Sparza and Pan regarding the transfer of over $480,000 in Chicago. She also described how Pan confirmed for his money courier that he received the $480,000 and how the two discussed the possibility of being followed. She even went further and talked about Sparza and Pan discussing how they were discussing whether or not they're being watched. She described the, quote, unquote, operation as a reference to individuals in conjunction, working in conjunction on behalf of the MLO and DTO. I will just say, I won't go through it, the whole thing, but 014-T, I think, is also another particularly salient example I'd point to. And then just if I could circle back to, maybe not your exact point, but what you referenced about the fact that there's no objection and showing plein air and all that. I think that's why it's important to maybe highlight and discuss a little bit more further the sua sponte instruction in the district court. And what the trial judge said was, just to paraphrase, you know, members of the jury, Agent Denowitz is only providing general testimony not related to the allegations in this case or the defendant. And again, I sympathize and I appreciate the situation where the judge was recognizing the error as it unfolded, but no one else seemed to. But let's think about that instruction a little bit. Was this really general testimony that had nothing to do with the allegations or the case? And if not, which of course it wasn't, was an interpretation of the bulk and primary evidence. This was a wire case with the testimony of a cooperator as well to interpret it and also Agent Denowitz. When you look at what the evidence actually was, I mean, what was the jury supposed to do with that? And how could they say, well, this is just general testimony that it was almost impossible to follow that instruction? Well, maybe, but you know, what was the judge supposed to do without an objection? And in fact, you know, the admissibility of the agent's testimony was noticed up pre-trial and and the judge was entitled to conclude that the lack of an objection was a strategic judgment call that didn't warrant the court stepping in to second guess or question. I mean, this is the classic kind of plain error dilemma. If it was so clear and obvious that this testimony crossed the stop it, you know, I just don't know how that standard can be satisfied here given the layers of judgment that would have to be entertained to determine what the defense's strategy was here. Sure. And I, like I said, I, Judge Sykes, I sympathize with the predicament the court was placed in. It's certainly not the trial judge's fault, but at least from my perspective, it's not the trial judge's fault that this deprived Mr. Ghanem his right to a fair trial and whether or not it constituted plain error. That's kind of the singular focus we have to and should have here. And I know I'm cutting into my rebuttal. So the last two things I'll say for now is I would direct your honors to the arguments made about Agent Genowitz in closing argument that discussed the point. And I think that dispels the suggestion that there was, that this was somehow strategic and essentially a Strickland matter as opposed to a plain error argument. What do we make of the fact that Mr. Ghan was acquitted on the conspiracy charge? That's a good point. I think the issue and the relevance of that is the fact that he put an entrapment defense on to the hard counts, to the substantive wire counts. And the government's entire argument, it's very simple and it was encapsulated in their closing arguments. I don't think I can make it better than they do, the importance it had to where they said participation in the count one conspiracy equals predisposition. And of course, the jury rejected the entrapment defense offered at trial. All right. Thank you. You can save the rest of your time for rebuttal. Mr. Follett. Good morning. May it please the court. I hope everyone can hear me. Thank you. The trial counsel here made a deliberate, knowing, and strategic choice not to object to Agent Danowitz's testimony. That constituted a waiver of any claim on appeal about the impropriety of her testimony. It was deliberate and knowing, as we know from the record, because pre-trial, when the subject of her testimony came up, counsel registered one objection to her testimony, but no others. During the course of her testimony at trial, again, counsel, I think, registered a couple of objections, but not to the substance that he complains about on appeal. So it was a choice of objection. It was knowing because he knew what was going on. Her testimony that's the subject of this claim on appeal lasted about 75 pages or so of the transcript, including both admission of the transcripts of the tapes that Danowitz was testifying about and also Danowitz's interpretation of those tapes. And finally, her choice not to object was strategic. And I say that because, you know, counsel's defense on the substantive counts, counts two through five, was an entrapment defense, namely that Mr. Gann had participated, as alleged, in money laundering transactions, but that he had lacked predisposition to do so and that the government and or the government had induced him to commit the offense. Not that it was somebody else that committed those acts or that those acts did not, in fact, constitute money laundering or anything like that. It was Gann participated, as alleged, but he had been entrapped to do so. And as for count one, the defense was, Gann's not on those tapes. He's not on those intercepts. He may have been talked about on the intercepts, but the portions mentioning Gann don't amount to proof that he had been involved in a conspiracy. This strategy was successful as to count one. Gann was acquitted on count one. And as to counts two through five, it was not successful, but not because of anything that Denowitz had testified about. Remember, Denowitz didn't know Gann, wouldn't have recognized Gann if she bumped into him in the courtroom, did not testify that the Gary or old Gann that was referred to on the intercepts was, in fact, the defendant. She had no knowledge of that. The only person or the key link in the government's case between the Gary and old Gann referred to on the intercepts came from Lim, who testified that, in fact, yeah, that's what we called him. There was other testimony, other evidence introduced that I believe when Gann was arrested, he had on him a telephone that had, I think it said old Gann's phone or something. He had self-identified on his telephone as old Gann. But Denowitz's testimony was nothing of the sort. It didn't link Gann to the conspiracy. Now, against all that, and remember, the other thing I want to say is in opening statement, trial counsel for Gann said, you know, we're going to hear a lot about money laundering in this trial, and you and I are all going to go to school to learn about how this works. And that's, in fact, what Denowitz did. She provided the foundation for understanding the counts in the indictment, including the counts to which Gann admitted conduct, but raised the difference of entrapment. This money laundering, and so for all these reasons, I think it was waiver on the part of Gann at trial. It was certainly not plain error. You know, there was no objection. I think it was not obvious that Denowitz's testimony was improper. This, the money laundering conspiracy and how it worked, I mean, I have to say it was really complicated and difficult to understand, difficult to explain to a jury, difficult for me to understand reading the transcript. And so I think the judge could have reasonably concluded that Denowitz's testimony, both in general as to how money works, but also in particular about how these phone calls, how these intercepts showed all the different moving parts and how they interacted with one another, and what the various code words meant in each of the 25 intercepts that were played, that the trial court could reasonably conclude that that would have been helpful to the jury. That was not for prejudice. We've talked about how his defense strategy was somewhat successful as to count one. I think that eliminates the question of prejudice, certainly as to count one. And as to counts two through five, as I said, it was not Denowitz who linked Gann to the intercepts of the transcripts from the intercepts. It was Lim. So, yes, the government argued that Gann had been predisposed to commit the offense. But that argument depended on Lim, not on Denowitz. Lim was the one who said Gann was on the intercepts, or he was the one talked about intercepts. Gann was the one with whom I'd been dealing in 2017. And Gann was the person who I'd known for 20 years. It was not Denowitz who provided that link. It was Ms. Lim. So, for all these reasons, I don't think there was a showing of prejudice. And if this claim about Denowitz was not waived, it was certainly not plain error. And I apologize. I had some trouble with the audio at the beginning of the this morning. So, I didn't quite hear whether counsel had raised any other issue, but I'm assuming he didn't. So, unless there's any other questions, we'd ask that you affirm the conviction and sentence of Mr. Gann. All right. Thank you very much, Mr. Levitt. Thank you, Your Honors. The first point I want to start with after listening to Mr. Stewart's well-delivered presentation is the fact that despite everything he had to say, you still didn't get an answer from the government about whether there was error or not. I don't think they've ever in their briefs or even here today addressed the crux of our argument about whether it's appropriate for an expert to whole cloth offer interpretations of the government wire it's tough for the government to prove something as complicated as money laundering admittedly is, particularly when it involves international transaction that doesn't change the analysis or allow them to attempt to salvage an insufficient case or presentation through improper expert testimony. I think I would point Your Honors, I think it's fair as Mr. Stewart, as Mr. Fulton raised about to reference what counsel said in opening statements. But again, he also made comments in closing argument. And I just went while I was listening and pulled it, and I point Your Honors to page 54 of the defense closing. It's numbered independently of the rest of the transcripts. But on page 54 is when he discusses Ms. Denowitz's testimony. And it is certainly brief. And he talks about, just to paraphrase it, how she didn't want to cooperate with him. She was worried about the harm that any questions she answers on cross-examination could do to her case. And she goes on to talk, and he goes on to talk also about the individual named Wei Li, the broker in New York, and goes on to attack Wei Li and talk about how it's not just a defense that he wasn't on the wires, because of course you can be found guilty of money laundering whether or not you're on the wires. It's potentially sufficient evidence if Ms. Lim herself identified him as annoying and a voluntary participant in the conspiracy to you didn't commit money laundering or the government hasn't proved as much beyond a reasonable doubt. And so, you know, just to tie it up, if there's no other questions, I'll point out that they did rely on Ms. Lim. And the problem with Ms. Lim is, of course, this is often the case with cooperators, that there's credibility issues. Ms. Lim's most significant one here was that she admitted under oath in a plea agreement knowing exactly what she was doing from day one. Her testimony at trial completely came off that. And she talked about this important meeting down in Mexico, where she flew down, I forget the dates, but it's something like six months, certainly well into many months after the conspiracies alleged to begin, where she says, I didn't know what was going on. And I confronted them about my suspicions, because during one pickup, the money smelled funny, like maybe marijuana, and the guy was a little sketchy and all this stuff. And they laughed at me. Gan and Pan laughed at me about how naive I was to not know what was going on, which again, was, you know, the evidence, it's that sort of testimony that implicates Gan directly as a knowing and voluntary participant in all of this. Meanwhile, she said something completely different in her plea agreement. And that was, of course, there was a long cross-examination of her. And to bolster her credibility, when there are all these other issues, when Gan isn't on the wires, when there are no bank records, when there's no post-arrest statement and everything else we detailed in our brief, we'd submit that that is certainly a situation where plain errors exist. And I respectfully ask that you all, your honors, remand. Mr. Levin, one follow-up on the merits, if that's okay. If I understand your argument with regard to exhibits 004T, 011T, and 014T, you're arguing that Agent Danowitz added facts in her interpretation or added commentary beyond these short cryptic text messages. She's inserting more. Is that your merits argument? It's the wholesale interpretation in the first place, whether she's adding something or not. I think it's fair and proper for her to interpret cryptic words that commonly appear. There's different words and features of how the bills are passed in the reference to serials. Talking generally about money laundering in their operations is proper, but just wholesale narrating what's going on based purely on her expertise, lacking personal involvement, that's the problem. And the fact that she's able to do it, and it's clear and obvious to her as a detached, neutral observer, just with her training and experience, that's something the jury can infer and use to say, well, then of course it would be obvious to Ghan what was going on, and he must have been knowingly participating in all of this, given the fact that he's supposedly old Ghan and Gary. Now, there are certain phrases that you're pointing to that exceed, that cross the line from interpretation to commentary. There's definitely the color and the characterization she adds to this and what's going on, I'd say. At the end of my time here, I don't have any specific ones, but certainly the ones, and in particular, I guess I would just add what's going on in people's minds, what the co-conspirators are thinking and their intent. That is certainly one I'd particularly point to. Again, the best I could offer is summarizing from our brief, those wire transcripts. Those are our primary issues on the merits. Thank you. All right. Thank you very much, Mr. Levitt, Mr. Fullerton. The case is taken under advisement, and we'll move to our third case.